# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **DANIELS CAPITAL CORPORATION,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 2:09-CV-629-RDP |
| } | |
| **JAMES LEE FLANIGAN,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

This case is before the court on Plaintiff's Motion for Sanctions (Doc. #12), filed December 28, 2009. Plaintiff requests the court to "enter a default for [Defendant's] refusal to participate and defend this litigation." (Doc. #12 at 2). For the reasons set forth, Plaintiff's motion is due to be granted.

**I.    PROCEDURAL HISTORY**

On March 30, 2009, Plaintiff filed this lawsuit and asserted the following claims against Defendant: (1) breach of contract and breach of fiduciary duty; (2) unjust enrichment; (3) fraud and suppression; and (4) specific performance and equitable relief. (Doc. #1). Plaintiff's claims arise out of an alleged breach of contract. (Doc. #1). Specifically, "Plaintiff is in the business of advancing funds to lawyers who represents defendants in court appointed cases. Funds are advanced by plaintiff to lawyers for accounts receivable in the form of fee declarations from federal and state courts." (Doc. #1 ¶ 4). According to Plaintiff, "[a]n attorney will initially submit to plaintiff an 'Assignment Schedule' listing pertinent information on each case and the amount to be billed and collected from the governmental body for the attorney's services. Plaintiff will then advance a

percentage of the fee declaration.  Once the voucher is paid by the governmental body, plaintiff will distribute to the attorney the reserve minus the agreed fees owed plaintiff."  (Doc. #1 ¶ 5).  In this case, Plaintiff alleges that Defendant "applied for and obtained funds from plaintiff, but either never completed the voucher process or did so and kept the money."  (Doc. #1 ¶ 6).

On July 2, 2009, Defendant filed his answer and generally denied the allegations contained in Plaintiff's complaint.  (Doc. #7).  On July 6, 2009, the court entered its Uniform Initial Order.  (Doc. #9).  According to that Order, and consistent with Federal Rule of Civil Procedure 26(f) and Local Rule 26.1, the court ordered the parties to confer no later than forty-five days from the date of Defendant's first appearance regarding their proposed discovery plan. (Doc. #9 at 1-2).  Moreover Rule 26(f)(2) requires the parties to submit their planning report "within 14 days after the conference."  Thus, the parties were required to confer on or before August 17, 2009 and to submit their report on or before August 31, 2009.

On August 19, 2009, Plaintiff's counsel attempted to contact Defendant and arrange a time to confer regarding the proposed discovery plan.  (Doc. #10-2 at 1).  Defendant did not respond to this request, and on October 12, 2009, Plaintiff's counsel again attempted to set a date and time to discuss these matters.  (Doc. #10-2 at 2).  Confronted with Defendant's unresponsiveness, Plaintiff filed a motion to compel, which requested the court to order Defendant's participation in developing a proposed discovery plan.  (Doc. #10).  On December 8, 2009, having not received any opposition or notice from Defendant, the court granted Plaintiff's motion and entered an order that required (1) Defendant to participate in a planning conference on or before December 16, 2009 and (2) the parties to submit their planning report on or before December 23, 2009.  (Doc. #11).

On December 17, 2009, Plaintiff's counsel sent Defendant a certified letter that, again, requested his cooperation with developing a planning report. (Doc. #12-2). Defendant received the letter on December 19, 2009. (Doc. #12-2). Defendant made no effort at collaboration, and due to Defendant's refusal and the expiration of the court's deadline, Plaintiff filed a Motion for Sanctions on December 28, 2009. (Doc. #12). On December 29, 2009, the court entered a Show Cause Order requiring, on or before January 13, 2010, Defendant to demonstrate in writing why Plaintiff's Motion for Sanctions should not be granted. (Doc. #13).

Eventually, Defendant contacted Plaintiff on December 31, 2009, and the parties developed and submitted their proposed planning report on the same day. (Doc. #14 at 1). On January 4, 2010, the court entered an Order that set the case for a scheduling conference on January 11, 2010 in chambers of the undersigned. (Doc. #15). On the scheduled date, without otherwise notifying the court, Defendant failed to attend the conference. (Doc. #16). The court initially decided to re-schedule the conference for January 21, 2010. (Doc. #16).

Nevertheless, two days later, the court's deadline in its Show Cause Order (Doc. #13) expired, and Defendant had failed to submit his written justification for denying Plaintiff's Motion for Sanctions. Thus, on January 15, 2010, the court entered an Order that (1) cancelled the re-scheduled conference and (2) extended the deadline for Defendant to show cause until February 8, 2010. (Doc. #17). Importantly, the Order highlighted that an entry of default was among the relief requested by Plaintiff and being contemplated by the court. (Doc. #17). On February 8, 2010, Defendant disregarded the court's Order and chose not to explain why the court should deny Plaintiff's Motion for Sanctions.

To ensure an opportunity to be heard, the court postponed consideration of Plaintiff's Motion for Sanctions in the unlikely event that Defendant would file an untimely response. Nearly two weeks have elapsed since the extended deadline, and having now sufficiently delayed ruling on Plaintiff's Motion for Sanctions in order to guarantee Defendant with an opportunity to respond, the court considers the Motion properly under submission.

**II.     DISCUSSION**

In this case, Plaintiff has requested the court to sanction Defendant for his failure to meaningfully defend this litigation. Specifically, Plaintiff requests the court to enter a default judgment against Defendant. The "entry of judgment by default is a drastic remedy and should be resorted to only in extreme situations. It is only appropriate where there has been a clear record of delay or contumacious conduct." *Turner v. Salvatierra*, 580 F.2d 199, 201 (5th Cir. 1978) (citing *E.F. Hutton & Co. v. Moffatt*, 460 F.2d 284, 285 (5th Cir. 1972); *Charlton L. Davis & Co. P.C. v. Fedder Data Ctr.*, 556 F.2d 308, 309 (5th Cir. 1977)). Despite the severity, "[t]he policy of resolving lawsuits on their merits must yield when a party has intentionally prevented the fair adjudication of the case." *Carlucci v. Piper Aircraft Corp.*, 102 F.R.D. 472, 486 (S.D. Fla. 1984).

As the former Fifth Circuit explained, "the district court has the authority . . . to enter default judgment . . . for failure . . . to comply with its orders or rules of procedure. While the authority is reiterated in some of the Federal Rules of Civil Procedure for particular situations, the power is one inherent in the courts in the interest of the orderly administration of justice." *Flaska v. Little River Marine Constr. Co.*, 389 F.2d 885, 887 (5th Cir. 1968). In other words, even separate and apart from the Federal Rules of Civil Procedure, "the District Court possesses the inherent power to police its docket. Incident to this power, the judge may impose formal sanctions upon dilatory litigants."

4

*Cent. Fla. Council Boy Scouts of Am., Inc. v. Rasmussen*, No. 07-CV-1091, 2009 U.S. Dist. LEXIS 77439, at *13 (M.D. Fla. Aug. 28, 2009) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-33 (1962); *Mingo v. Sugar Cane Growers Co-op of Fla.*, 864 F.2d 101, 102 (11th Cir. 1989)).  As the Southern District of Alabama further elaborated, "it is well established that '[a] court has the power to enter default judgment when a defendant fails to defend its case appropriately or otherwise engages in dilatory tactics,' such as where 'the adversary process has been halted because of an essentially unresponsive party.'"  *Ward v. Real Ships, Inc.*, No. 09-CV-65, 2009 U.S. Dist. LEXIS 80297, at *6-7 (S.D. Ala. Aug. 31, 2009) (quoting *Carpenters Labor-Mgmt. Pension Fund v. Freeman-Carder LLC*, 498 F. Supp. 2d 237, 240 (D.D.C. 2007)).  And as the First Circuit observed, "it has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.  Those inherent powers to sanction parties for litigation abuses include the power to act *sua sponte* . . . to enter a default judgment."  *John's Insulation, Inc. v. L. Addison & Assocs.*, 156 F.3d 101, 108 (1st Cir. 1998) (citations and quotation marks omitted); *see also Smith v. Comm'r*, 926 F.2d 1470, 1475 (6th Cir. 1991) ("It is well established that courts have inherent power to dismiss and/or enter a default when a party disobeys a court order or otherwise interferes with the efficient administration of justice.") (citations omitted); *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 805 (9th Cir. 1982) (same).

In the Eleventh Circuit, "[t]he key to unlocking a court's inherent power is a finding of bad faith."  *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (citing *In re Motz*, 65 F.3d 1567, 1575 (11th Cir. 1995)); *see also Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1251 (11th Cir. 2006) (citations omitted); 2 MOORE'S FEDERAL PRACTICE – CIVIL § 11.41 (2010) ("Imposition

5

of sanctions under the court's inherent power ordinarily requires a showing of bad faith."). "A party demonstrates bad faith by, *inter alia*, delaying or disrupting the litigation or hampering enforcement of a court order." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1121 (11th Cir. 2001)); *see also Byrne*, 261 F.3d at 1123 ("[A] court must do more than conclude that a party acted in bad faith; it should make specific findings as to the party's conduct that warrants sanctions."). In this case, Defendant has exhibited bad faith by (1) failing to timely cooperate with Plaintiff in the development of a discovery plan and, therefore, disregarding the Federal Rules of Civil Procedure and the court's Uniform Initial Order; (2) without approval, delaying compliance with the court's Order compelling his participation in the development of a discovery plan; (3) not attending the court's scheduling conference without giving prior notice; and (4) twice refusing to respond to the court's Show Cause Order. Although Defendant is proceeding pro se and pro se litigants are generally afforded a certain degree of latitude, "[t]he Court has not seen the liberal standard applied in a case where the pro-se litigant is an attorney, nor has the Court seen another court excuse the failure to follow the rules or not apply the rules to an attorney who is proceeding pro se." *Friedlander v. Cook*, No. 06-1160, 2008 U.S. Dist. LEXIS 92006, at *13 (D.N.M. Aug. 13, 2008); *see also Harbulak v. County of Suffolk*, 654 F.2d 194, 198 (2d Cir. 1981) ("[A lawyer proceeding pro se] cannot claim the special consideration which the courts customarily grant to pro se parties.") (citation omitted); *Delso v. Trs. for the Retirement Plan for the Hourly Employees of Merck & Co., Inc.*, No. 04-3009, 2007 U.S. Dist. LEXIS 16643, at *42 (D.N.J. March 5, 2007) ("[A]ttorneys proceeding pro se are generally not entitled to the same liberality of treatment as pro se laymen.").

Additionally, the court is aware that a "party's simple negligence in complying with a court's order does not warrant" a dispositive sanction. *Ford v. Fogarty Van Lines, Inc.*, 780 F.2d 1582, 1583 (11th Cir. 1986) (citation omitted). But Defendant's record in this case exhibits more than mere inadvertence. Compounding the significance of the above incidents, Defendant has never attempted to contact the court, formally or otherwise, in order to clarify the reasons for his unwillingness or inability to meaningfully cooperate. Accordingly, the court finds that Defendant has demonstrated bad faith through his pattern of disregard for this litigation in general and for the various orders entered in particular.

Additionally, according to the Eleventh Circuit, the court must tailor the sanction to the targeted conduct. *Eagle Hosp. Physicians, LLC*, 561 F.3d at 1306. Specifically, the court must fashion a sanction that carefully balances its effectiveness with the conduct to be remedied and deterred. *Id.*; *see also* 6A FEDERAL PRACTICE & PROCEDURE – CIVIL § 1531 (2d ed. 2009) ("In [cases in which the court has entered a default] the party typically has engaged in a pattern of disobedience or noncompliance with court orders, including failing to appear at scheduled conferences, so that the court concludes that no lesser sanction is warranted."). As the D.C. Circuit has explained, "the district court must properly 'calibrate the scales' to ensure that the gravity of an inherent power sanction corresponds to the misconduct. . . . [T]his calibration must be apparent in the record." *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1479 (D.C. Cir. 1995) (citations omitted).

In this case, based on the record before it, the court concludes that Defendant's bad faith and refusal to litigate warrants entry of default because lesser sanctions would be ineffective to ensure further compliance. First, the court has already attempted to informally stay the proceedings in order to accommodate Defendant's participation. Giving Defendant the benefit of the doubt, the court

7

repeatedly avoided consideration of possible sanctions. In response, however, Defendant continued to stonewall the proceedings. Second, additional "warnings or a reprimand will clearly be ineffective, as Plaintiff has repeatedly ignored this Court's other warnings of potential sanctions." *Smith ex rel. Ali v. Altegra Credit Co.*, No. 02-8221, 2004 U.S. Dist. LEXIS 21478, at *23 (E.D. Pa. Sept. 23, 2004). Third, the imposition of costs, fees, or fines would not necessarily ensure Defendant's future adherence to court orders. In particular, Defendant's repeated pattern of flouting past orders strongly suggests his general unwillingness to comply with any order of this court – even one imposing a monetary sanction. Accordingly, entering an order imposing costs, fees, or fines would only further delay litigation and is very likely an exercise in futility. As the Eleventh Circuit explained in the context of Rule 37 sanctions, which are analytically analogous to inherent power sanctions, "[w]hen lesser sanctions would be ineffective, Rule 37 does not require the vain gesture of first imposing those ineffective lesser sanctions." *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1544 (11th Cir. 1993); *see also Shepherd*, 62 F.3d at 1479 ("[Considering less drastic sanctions] does not mean that courts must first impose a lesser sanction [because] a district court need not exhaust other options before dismissing a suit or imposing a default judgment."). Fourth, striking pleadings would not be a more effective or appropriate sanction because Defendant's Answer contains only general denials as opposed to affirmative defenses.[1] Finally, Defendant was on notice that the court was considering an entry of default for his failure to participate, but despite multiple opportunities to show cause, he opted not to answer. *See United States v. Howell*, No. 08-0053, 2008 U.S. Dist. LEXIS 89614, at *8 (S.D. Ala. Nov. 4, 2008) ("Indeed, defendant's course of conduct amounts to

---

[1] Indeed, arguably it could be said that striking Defendant's answer would have the same procedural effect as entry of default.

8

a deliberate and intentional failure to respond, which is just the sort of dilatory litigation tactic for which the default judgment mechanism was created."). Thus, after considering the alternatives, the court concludes that an entry of default is the most appropriate sanction because (1) no lesser sanction would as effectively remedy the defiance and (2) an entry of default is commensurate with Defendant's conduct in this litigation.

Entering a default, however, does not necessarily mandate entering *judgment* by default. As the former Fifth Circuit clarified, "a defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered. . . . The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. In short . . . a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Nishimatsu Constr. Co. Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also Arango v. Gusman Travel Advisors*, 761 F.2d 1527, 1530 (11th Cir. 1985) ("An entry of default is not a default judgment."). Moreover, "[a]lthough a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999) (citing 10A FEDERAL PRACTICE & PROCEDURE – CIVIL § 2688 (3d ed. 1998)). Thus, even though the court concludes that entry of default against Defendant is warranted, Plaintiff has not yet established that (1) the Complaint states claims upon which relief may be granted and (2) the scope of relief requested is appropriate. Accordingly, at this stage, the court reserves its decisions as to (1) whether judgment by default should be entered and, if so, (2) the amount and character of Plaintiff's relief.

9

**III.     CONCLUSION**

For the above reasons, the court concludes that the entry of default is a proper sanction in response to Defendant's pattern of conduct in this litigation. An Order consistent with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** this    23rd    day of February, 2010.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE