FILED
2010 Aug-16 PM 04:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **DANIELS CAPITAL CORPORATION,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 2:09-CV-629-RDP |
| **JAMES LEE FLANIGAN,** | } |
| **Defendant.** | } |

## MEMORANDUM OPINION

On February 23, 2010, the court directed the Clerk of Court to enter a default against Defendant for his contumacious conduct. (Docs. #18, 19). On May 13, 2010, the court held a hearing to determine whether final judgment by default should be entered against Defendant and in favor of Plaintiff. (Doc. #24). Based on the evidence presented at the hearing and Plaintiff's various submissions, the court concludes that final judgment by default is due to be entered in Plaintiff's favor in the amount of $72,076.89.

Plaintiff advances funds to attorneys who perform court-appointed indigent defense work around the nation. (Doc. #1 ¶ 4). Funds are advanced by Plaintiff to the attorney for accounts receivable in the form of a fee declaration from federal and state courts. (Doc. #1 ¶ 4). An attorney will initially submit to Plaintiff an "Assignment Schedule" listing pertinent information on each case and the amount to be billed and collected from the governmental body for the attorney's services. (Doc. #1 ¶ 5). Plaintiff will then advance a percentage of the fee declaration. (Doc. #1 ¶ 5). Once the voucher is paid by the governmental body, Plaintiff will distribute to the attorney the reserve minus the agreed fees owed Plaintiff. (Doc. #1 ¶ 5).

Defendant approached Plaintiff regarding its services for advancing funds for appointments in the State of West Virginia. (Doc. #1 ¶¶ 2,7). He sought advanced funding from Plaintiff on numerous cases on which he had been appointed counsel by the state. (Doc. #1 ¶ 7). Defendant executed an agreement with Plaintiff pursuant to which he sold certain accounts to Plaintiff in exchange for advanced funding. (Doc. #1 ¶ 11). The agreement provided that, in the event of a breach, Plaintiff is entitled to collect not only the amount initially funded, but also the maximum fees (pursuant to a schedule) and the lost income that Plaintiff would have earned had Defendant not breached the agreement. (Doc. #1, Exhibit). The agreement further provided that Plaintiff shall be entitled to recover from Defendant reasonable attorney's fees, court costs, and other expenses incurred in enforcing the terms of the agreement. (Doc. #1, Exhibit at 13). In the event of non-payment, Plaintiff agreed to make collection efforts and file suit if necessary. Plaintiff pays its attorneys one-third of the amount collected. (Doc. #22-1 ¶ 8). This percentage is within the range of reasonableness. (Doc. #25-1 at 2). Additionally, based on experience with comparable fee requests in similar cases, the court finds that one-third is a reasonable attorney's fee under these circumstances. *See, e.g.*, *Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) ("The court . . . is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.") (citation omitted).

In forty-two cases on which Defendant had been appointed counsel (and on which he sought and received advanced funding from Plaintiff), Defendant did not submit the necessary paperwork to receive a fee. (Doc. #1 ¶ 10). These fees would have been payable to Plaintiff because, in exchange for the advanced funding, Defendant assigned the payments he was to receive from the

court for the appointed case. (Doc. #1 ¶ 10). The funds advanced by Plaintiff were a percentage of the total payment Defendant was to have received from the state. (Doc. #1 ¶ 7). Plaintiff charges a fee for providing its service that is based upon the number of days that the advance is outstanding (*i.e.*, the number of days that have passed between the initial advance to the attorney and receipt of the payment on the account from the state). (Doc. #21 at 2-3).

After making unsuccessful efforts to collect these amounts from Defendant, Plaintiff initiated this action. In addition to specific performance and equitable relief, Plaintiff's complaint seeks monetary damages for the alleged breach of contract, breach of fiduciary duty, unjust enrichment, and fraud. (Doc. #1 ¶¶ 15-18).

Upon the entry of default and the corresponding acceptance of the allegations in the complaint as true, Plaintiff has proven that Defendant applied for and accepted advances in forty-two cases, but breached the agreement by failing to take steps necessary to assign Plaintiff the payments from the State of West Virginia. (Doc. #1 ¶ 15). Of the forty-two cases on which Plaintiff advanced funds to Defendant and of which it has not received payments from the State of West Virginia, the face amount advanced to Defendant was $21,991.94. (Doc. #21 at 3). The fees on this amount total $31,803.23. (Doc. #21 at 3).

Plaintiff also claims that it suffered lost income on the amounts owed by Defendant (*i.e.*, $35,412.08). (Doc. #21 at 3). Although the recovery of lost income is clearly a contractual remedy available to Plaintiff under its contract with Defendant, Plaintiff has not meaningfully quantified or, more importantly, established its entitlement to this consequent damage. *See, e.g.*, *Intergraph Corp. v. Bentley Sys. Inc.*, No. 1080300, 2010 Ala. LEXIS 38, at *28 (Ala. Mar. 12, 2010) ("[T]he loss of profits must be natural and proximate, or direct result of the breach complained of and they must also

be capable of ascertainment with reasonable, or sufficient, certainty, or there must be some basis on which a reasonable estimate of the amount of the profit can be made . . . .") (citation omitted).  For example, Plaintiff did not establish that all of its capital was fully employed during the time period that the amounts advanced to Defendant were outstanding such that it missed an opportunity to re-advance those funds or that it otherwise actually suffered any other lost income as a specific result of Defendant's failure to properly assign the payments to Plaintiff.  In short, Plaintiff's claim to lost income remains highly speculative and, more fatally, indeterminate.  *See Daniels Capital Corp. v. Blake*, No. 09-CV-1654, Doc. #14 at 3 (N.D. Ala. Jan. 6, 2010) (Proctor, J.) (reaching the same conclusion on essentially identical facts and evidence).

Plaintiff additionally requests specific performance.  The remedy of specific performance is a species of equitable relief.  Consequently, "if a trial court determines that a party has an adequate remedy in an award of money damages, that remedy is preferred."  *Goodwyn, Mills & Cawood, Inc. v. Markel Ins. Co.*, 911 So. 2d 1044, 1051 n.8 (Ala. 2004) (citing *Ala. Water Co. v. City of Anniston*, 151 So. 457, 461 (Ala. 1933); *General Aviation, Inc. v. Aerial Servs., Inc.*, 700 So. 2d 1385, 1387 (Ala. Civ. App. 1997)); *see also Grayson v. Boyette*, 451 So. 2d 798, 800 (Ala. 1984) ("If, however, the loss occasioned by the breach cannot be fully compensated for in an action at law, specific performance will be granted.") (citing *Huddleston v. Williams*, 103 So. 2d 809 (Ala. 1958)).  In this case, Plaintiff undeniably has requested, for the same causes of action, both a money judgment and specific performance.  Nevertheless, Plaintiff has not established that the money judgment, on its own, is an inadequate remedy.  Based on the evidence and submissions before it, therefore, the court concludes that Plaintiff is not entitled to specific performance.

In addition to its breach of contract claim, Plaintiff asserts that Defendant committed fraud against it. (Doc. #1 ¶ 17). Plaintiff's fraud claim is based on the fact that, when Defendant sought each new advance, he represented that he had completed and filed the appropriate paperwork with the State of West Virginia on prior assigned cases such that Plaintiff would received the appropriate payment from the state. (Doc. #1 ¶ 17). Plaintiff alleges that Defendant: (1) knew at the time he sought additional funds that he had not done so; (2) misrepresented that he had done so on all cases; and (3) suppressed the fact that he had not done so. (Doc. #1 ¶ 17). On this basis, Plaintiff seeks punitive damages solely for the alleged fraud. (Docs. #1 ¶ 19, 21 at 4). According to Plaintiff, because Defendant "had no intention that [Plaintiff] would ever be paid," (Doc. #21 at 4), Defendant engaged in fraudulent conduct sufficient to sustain a punitive damage award. Plaintiff, however, has not presented any concrete evidence regarding whether and to what extent Defendant actually intended to perpetrate a fraud. In other words, Plaintiff has not shown that Defendant had no intention of performing on his promises at the time he made them, or that he suppressed facts regarding his lack of performance. Accordingly, due to the dearth of evidence regarding Defendant's intent and, more importantly, Plaintiff's concession that Defendant's conduct may have been "negligent and/or innocently done," (Doc. #26 at 7), the court does not find an award of punitive damages to be appropriate. *See* ALA. CODE § 6-11-20(a); *Prudential Ballard Realty Co., Inc. v. Weatherly*, 792 So. 2d 1045, 1049 (Ala. 2000).

Based upon the evidentiary record before the court, Plaintiff has established that it is due to recover from Defendant the following damages:

1. the face value of the amounts advanced to Defendant: **$21,991.94**;

2. the agreed-upon associated fees: **$31,803.23**;

3. a reasonable attorney's fee equal to one-third of the amount recovered ($21,991.94 + $31,803.23 = $53,795.17; $53,795.17 ÷ 3 = $17,931.72): **$17,931.72**; and

4. its filing fee: **$350.00**.

for a total recovery of **$72,076.89**.

A final default judgment in favor of Plaintiff and against Defendant that is consistent with this Memorandum Opinion will be entered separately.

**DONE** and **ORDERED** this ____16th____ day of August, 2010.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE